The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with regard to minor modifications.
************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Wausau Insurance Company was the carrier on the risk.
3. The employer-employee relationship existed between the parties at all relevant times.
4. The plaintiff's average weekly wage was $201.08, which yields a weekly compensation rate of $134.06.
5. The issues for determination are:
 a. Whether plaintiff sustained an injury by accident or specific traumatic incident on or about 10 November 1994, and if so to what benefits may she be entitled under the Act; and
 b. Whether the back problems of which plaintiff currently complains are causally related to the injury alleged to have occurred at work on or about 10 November 1994.
6. The parties stipulated forty-six pages of medical reports into the record.
************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On or about 10 November 1994, plaintiff was a fifty-four year old female with a tenth grade education, who was employed by defendant-employer as a food service operator at the cafeteria in the CeCorp location plant. Plaintiff had prior work experience running a cash register and cooking in a cafeteria. She had been employed in food service with defendant-employer at another plant.
2. In September 1994, plaintiff sought medical treatment from her family doctor, Dr. John Kessell, for back pain which she related to having to stand all day. At that time, plaintiff complained of low back pain which radiated into her right leg. Plaintiff returned to Dr. Kessell on 10 November 1994, complaining of more extensive back pain. She did not relate any history of a new incident or a specific injury having occurred. Plaintiff was next seen by Dr. Kessell on 11 November 1994, at which time plaintiff related that her back had been hurting for two days.
3. At the 22 February 1996 hearing before the Deputy Commissioner, plaintiff testified that while she was helping to cater a special dinner for CeCorp employees on 10 November 1994, she stood straight up after picking-up a gallon of salad dressing and felt a pain in her back.
4. On 14 November 1994, plaintiff sought chiropractic treatment from Eric Shook, D.C., where she continued to receive regular treatments and manipulations through June 1995.
5. On 9 February 1995, plaintiff filed an I.C. Form 18, Notice of Accident to Employer, alleging that she had sustained a torn disc on 9 November 1994 while lifting, turning and bending during work activities. Thereafter, plaintiff filed a Form 33 Request for Hearing on 19 May 1995 alleging that she had sustained an injury on 9 November 1994.
6. In February 1995 plaintiff's husband suffered a severe heart attack for which he underwent open heart surgery in March 1995. However, plaintiff offered sworn testimony in her deposition of 31 August 1995 that she had been disabled during this time, and that her husband had been required to assist her at the home.
7. Plaintiff underwent an MRI scan on 23 May 1995 which revealed a focal bulging at L4-5, and no evidence of significant intradural abnormality or abnormality of the paravertebral soft tissues.
8. Plaintiff was seen 28 June 1995 by Dr. Andrea A. Stutesman, at which time plaintiff advised Dr. Stutesman that she did not know how she had hurt her back. Dr. Stutesman found no evidence of a disc herniation. She diagnosed plaintiff with sacroiliac joint arthritis, myofascial pain of the lumbosacral muscles, possible fibromyalgia, poor posture, and exogenous obesity with a history of hypertension and hiatal hernia.
9. Plaintiff did not offer symptoms consistent with a disc herniation, as she had complained of bilateral tenderness, and no atrophy or radiculopathy had been observed. This finding is in accordance with and is supported by the testimony of Dr. Stutesman.
10. On 31 August 1995 plaintiff gave a sworn deposition in which she was asked what had occurred. This testimony again is in conflict with her prior testimony. She stated that her back just started hurting, and that she did not know of anything specific that she had done to hurt her back.
11. Over ten months after the alleged injury by accident, Dr. dePerczel reviewed the MRI scan results on 21 September 1995. At the examination with Dr. dePerczel, plaintiff was observed to have sciatica with straight leg raising and a loss of muscle tone in the right leg. This represented a significant change in the objective findings since the June exam by Dr. Stutesman. Plaintiff was diagnosed with a herniated disc for which Dr. dePerczel performed a decompression diskectomy of the L4-5 on the right on 2 November 1995.
12. Plaintiff was disabled from work as a result of the surgery by Dr. dePerczel from 10 November 1995 through 5 December 1995, when plaintiff was released to light duty. Plaintiff returned to full duty work for a different employer seven weeks after the surgery.
13. Plaintiff's surgery could have been a result of degenerative changes in her back, and not as a result of any traumatic incident. Further, Dr. dePerczel was unable to state what had caused the disc herniation for which he had performed surgery.
14. Plaintiff has retained a ten percent permanent partial impairment to her back as a result of the surgery.
15. The testimony of Dr. Stutsman is given greater weight than that of Dr. dePerczel due in part to the proximity of her examinations to the alleged incident.
16. Plaintiff had a prior workers' compensation injury in 1992 which she had reported to Sandra Riggins, defendant-employer's Human Resources director, who scheduled medical appointments for her with Dr. Hart, a company doctor, for treatment.
17. Plaintiff did not report an injury to Linda Watts on or about 9 November 1994 although she mentioned that she had a backache that day.
18. Veronica Gray was the unit supervisor and was on site with Ms. Watts and plaintiff for the special catering dinner. Plaintiff told Ms. Gray that she had a backache on 9 November 1994 when they began the catering, but she did not relate her backache to any injury on the job.
19. Plaintiff called Ms. Gray on the following Monday, 14 November 1994, at which time she stated that her back hurt. Ms. Gray asked her how it had happened and plaintiff responded that she hurt her back while putting a pan of meat into a refrigerator. Ms. Gray instructed plaintiff to call Sandra Riggins at Human Resources, who was in charge of workers' compensation.
20. On 14 November 1994, plaintiff called Ms. Riggins to advise that she had been to a chiropractor and expected the employer to pay for it. Ms. Riggins told plaintiff that the employer would not pay for chiropractic treatment. Ms. Riggins then offered to schedule an appointment with an orthopaedist, and asked plaintiff how she had injured herself. However, plaintiff refused to continue the conversation.
21. Plaintiff began working in August of 1995 with T D Foods.
22. The greater weight of the competent and credible evidence in the record supports a finding that plaintiff did not sustain an injury by accident nor a specific traumatic incident on or around 9 November 1994. Specifically, plaintiff is not accepted as a credible witness as to the testimony offered at the hearing regarding the history of the alleged injury, in the deposition testimony, or in her report of an alleged injury to Veronica Gray, and therefore, her testimony is specifically rejected.
************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of the employment on 9 November 1994. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff's claim, therefore, is not compensable under the provisions of the Act. N.C. Gen. Stat. § 97-2 (6).
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is, and under the law, DENIED.
2. Each side shall pay its own costs.
This the 9th of July 1997.
 S/ _______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________ COY M. VANCE COMMISSIONER
S/ _______________ MARY MOORE HOAG DEPUTY COMMISSIONER
DCS:jmf